IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HIV AND HEPATITIS POLICY INSTITUTE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | No. 1:22-cv-2604 |

**DECLARATION OF CARL SCHMID**

I, Carl Schmid, hereby declare as follows:

1. I am above 18 years of age, and have personal knowledge of the following facts.

2. I am the Executive Director of the HIV and Hepatitis Policy Institute, which I formed in 2020. I have been a national policy and advocacy leader in the HIV community for over 20 years.

3. The HIV and Hepatitis Policy Institute is a nonprofit organization headquartered in Washington, D.C. Its official mission statement is that "[t]he HIV+Hepatitis Policy Institute promotes quality and affordable healthcare for people living with or at risk of HIV, hepatitis, and other serious and chronic health conditions." *See About Us*, HIV and Hepatitis Policy Institute, https://hivhep.org/about-us/.

1

4. The expanding use of copay accumulators in insurance plans imposes significant harms on patients with chronic conditions, like HIV and hepatitis, requiring often-expensive specialty medications. Copay accumulators thus pose an issue of considerable importance to the HIV and Hepatitis Policy Institute.

5. To that end, in addition to extensive policy advocacy at the state and national levels seeking to stop this unfair and exploitative practice, the HIV and Hepatitis Policy Institute has diverted significant resources towards direct educational services and awareness campaigns aimed at countering the harmful effects of copay accumulators on affected patient populations in the wake of HHS's and CMS's explicit approval of copay accumulators, regardless of generic availability, in the 2021 NBPP challenged in this lawsuit.

6. Specifically, the HIV and Hepatitis Policy Institute has devoted countless hours of staff time to researching insurance plans throughout the country in order to determine how each plan addresses cost-sharing obligations and copay assistance. This information is usually buried in byzantine plan documents, and it takes significant staff time and expertise to unravel each plan's policies. The Institute has then directly educated patients and patient groups throughout the country on these findings and their impact on patients, enabling patients to make more informed coverage and care decisions.

7. This work has occurred both within the HIV and hepatitis communities and other patient communities, including those impacted by cancer, mental illness, autoimmune diseases, arthritis, hemophilia, cardiovascular illnesses, Lupus, psoriasis, and many others, including those with rare diseases.

8. The HIV and Hepatitis Policy Institute has also devoted resources toward public awareness campaigns, frequently working with the media and reporters throughout the country, making the general public aware of copay accumulators and the current regulations impacting them, so that patients can make better decisions both in selecting their insurance and in accessing and affording their medications once they have insurance.

9. Because the Institute has finite staff and financial resources, devoting time, money, and energy towards these educational efforts to combat the worst effects of copay accumulators necessarily decreases the Institute's ability to pursue its other organizational goals, including efforts related to HIV and hepatitis-specific programs and policies. For example, this has been a particularly challenging period for combating HIV and hepatitis due to the COVID-19 crisis. Not only did the Institute work to educate its patient communities and stakeholders on how to carry out and adopt its operations during the crisis, but since HIV and hepatitis are both infectious diseases, many resources and expertise in the field were devoted to COVID-19 and therefore unavailable for other diseases like HIV and hepatitis, making the Institute's efforts in this area all the more necessary. Yet the Institute instead had to divert much of its resources toward copay accumulators.

10. Were it not for the 2021 NBPP's explicit approval of copay accumulators in all circumstances (not limited to situations with available generics), the Institute would not have to make these expenditures—and certainly not at the levels it is required to make now. The 2021 NBPP is therefore responsible for this diversion of the Institute's resources.

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge.

Executed this _1st_ day of _February___, 2023, at ___Washington DC_____
                    (month)                                    (city and state)

Carl Schmid